[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14883

_____

D.C. Docket No. 6:19-cr-00084-CEM-DCI-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EVERETT JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 18, 2021)

Before WILLIAM PRYOR, Chief Judge, LUCK and ED CARNES, Circuit
Judges.

WILLIAM PRYOR, Chief Judge:

In this sentencing appeal, a defendant convicted of selling heroin and possessing a firearm as a felon contests the applicability of a provision of the Sentencing Guidelines that increases the offense level when a criminal uses or possesses a gun "in connection with" another felony. United States Sentencing Guidelines Manual § 2K2.1(b)(6)(B) (Nov. 2018). After agreeing to sell heroin and a firearm to a confidential informant, Everett Jackson sold the heroin as promised but failed to deliver the firearm on that date. He made up for it later when he provided the firearm at the same time his associate provided more heroin for sale to the informant. The district court found that a sufficient connection existed between the first heroin sale and the later firearm sale, and we affirm.

## I. BACKGROUND

In July 2018, a confidential informant worked with law enforcement to apprehend two men selling contraband in Daytona Beach, Florida. The informant said he could purchase heroin from Sheldon Rice and a firearm from Rice's "acquaintance," Everett Jackson. Law enforcement prepared the informant for a controlled buy of both items to take place on July 26. But Rice later said he was not available to provide the heroin. Instead, Jackson would provide both the heroin and the firearm at Jackson's apartment. The informant called Jackson, and Jackson confirmed that he would be waiting at his apartment.

The informant arrived at Jackson's apartment on July 26. The drug sale

happened as planned. When the informant arrived, Jackson came outside, retrieved a bag containing six grams of heroin from someone standing in his parking lot, and handed the bag to the informant. The informant paid Jackson $650, and Jackson returned $20 in change.

The firearm sale did not go to plan. Jackson told the informant that he did not have the firearm yet after all. Jackson expressed anger that he did not have the firearm as expected, and he promised to get it soon.

A few days later, on July 30, the informant told law enforcement that Jackson had obtained the firearm and that Rice had more heroin for sale. Again under law-enforcement supervision, he set up a controlled buy to purchase both the drugs and the firearm on August 1 at Jackson's apartment.

When the informant arrived at Jackson's apartment on August 1, Rice and Jackson were waiting outside. The informant parked his car next to Rice's car. Jackson went inside his apartment and retrieved the firearm. He put the firearm in the informant's car, and the informant paid him $700. Then the informant went to Rice's car to complete the heroin transaction with Rice.

Police arrested Jackson. He was charged with possessing a firearm as a convicted felon and with possessing heroin with intent to distribute it. 18 U.S.C. §§ 922(g)(1), 924(a)(2); 21 U.S.C. § 841(a)(1), (b)(1)(C). He pleaded guilty to both charges subject to a plea agreement.

The district court determined that Jackson's offense level under the Sentencing Guidelines was 21, based in part on a four-level enhancement for using or possessing a firearm or ammunition "in connection with" another felony offense. U.S.S.G. § 2K2.1(b)(6)(B). Over Jackson's objection, the district court found that the enhancement applied because the informant "showed up" to the July 26 sale "thinking he was going to buy drugs and guns, and the gun wasn't there." "So," the informant was told, "come back and then we'll do the gun, and they did that." The drug and firearm sales were "more than connect[ed]," the court found, and the government's evidence "completely tie[d] the knot" between them. The district court made this finding even though it ruled that Rice's sale of heroin in Jackson's parking lot on August 1 was not relevant conduct for Jackson's July 26 heroin sale and August 1 firearm sale.

With the enhancement, Jackson's guidelines range was 57 to 71 months. Without the enhancement, Jackson's guidelines range would have been 37 to 46 months. The district court sentenced him to 57 months of imprisonment and three years of supervised release.

## II. STANDARD OF REVIEW

We review the interpretation and application of the Sentencing Guidelines *de novo*, and we review underlying findings of fact for clear error. *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015). The determination that a

defendant possessed a firearm "in connection with" another felony is a finding of fact. *United States v. Martinez*, 964 F.3d 1329, 1333 (11th Cir. 2020).

### III. DISCUSSION

We review sentences to determine whether they are procedurally and substantively reasonable. *United States v. Isaac*, 987 F.3d 980, 990 (11th Cir. 2021). Miscalculating the guidelines range is one kind of procedural unreasonableness. *United States v. Green*, 981 F.3d 945, 953 (11th Cir. 2020). Jackson argues that his sentence was procedurally unreasonable because the district court miscalculated his guideline range by relying on an enhancement that should not have applied.

The provision in question, section 2K2.1(b)(6)(B), increases the offense level by four if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." The commentary explains that one kind of sufficient connection exists when the firearm "facilitated, or had the potential of facilitating," the other felony offense. *Id.* cmt. n.14(A). Facilitation occurs, for example, when a drug dealer setting up a controlled-substance sale offers to also sell a firearm to "shore up" the drug purchase. *See United States v. Ryan*, 935 F.3d 40, 42–43 (2d Cir. 2019) (internal quotation marks omitted). Similarly, adding a firearm sale to a drug sale can facilitate the drug sale by making the purchase of contraband more efficient and reducing the risk of detection by reducing the

5

number of transactions. *See United States v. Darryl Jackson*, 877 F.3d 231, 241 (6th Cir. 2017).

The district court did not clearly err by finding that Jackson "used or possessed" a firearm "in connection with" a heroin sale. U.S.S.G. § 2K2.1(b)(6)(B). The original heroin and firearm sales were negotiated to occur at the same time on July 26. The confidential informant arrived at Jackson's apartment reasonably expecting to complete both transactions at the same time, and Jackson expressed anger that he unexpectedly did not have the firearm. Coordinating the sales made them more convenient, shoring up the drug sale and allowing the sellers to conduct two sales with a minimal increase in the risk of detection. *See Ryan*, 935 F.3d at 43; *Darryl Jackson*, 877 F.3d at 241. A sufficient connection existed to support the application of the four-level enhancement in section 2K2.1(b)(6)(B).

The proximity of the firearm to a second jointly arranged firearm-and-drug transaction on August 1 could have also supported this finding, but the district court determined that the August 1 heroin sale was not relevant conduct. That finding is unchallenged on appeal, so our review involves only the July 26 heroin sale.

Jackson argues that three aspects of the transactions defeat the connection between the drug and firearm sales: one transaction was with Jackson and the other

was with Rice, Jackson did not deliver the firearm until several days after he delivered the heroin, and the firearm and drugs had separate purchase prices. But none of these facts undermines the connection between the drug and firearm sales. Although one transaction was with Rice and the other was with Jackson, the two were working closely together. Jackson provided the heroin on Rice's behalf when Rice could not attend the sale, and he agreed to let both transactions occur at his apartment. To be sure, Jackson did not deliver the firearm until several days after he delivered the heroin for Rice, but that delay was an unexpected coincidence and does not change the fact that the deals were planned to occur at the same time. And though a "package deal" is one kind of sufficient connection between drug and firearm sales, *see United States v. Carillo-Ayala*, 713 F.3d 82, 96 (11th Cir. 2013) (applying U.S.S.G. § 5C1.2(a)(2)), it is not necessary to apply the enhancement, *see id.* at 96, 98; *Martinez*, 964 F.3d at 1336–38. None of Jackson's arguments renders clearly erroneous the finding that Jackson possessed the firearm "in connection with" the heroin transaction, so the guidelines calculation was correct and Jackson's sentence was not procedurally unreasonable.

## IV. CONCLUSION

We **AFFIRM** Jackson's sentence.